**Kathleen ZICHY and Jane E. Schofer**

v.

**The CITY OF PHILADELPHIA.**

**Civ. A. No. 72–1810.**

United States District Court,
E. D. Pennsylvania.

Dec. 29, 1975.

Barbara Muehleib, Barbara Brown, Women's Law Project, Philadelphia, Pa., for plaintiff.

John M. McNally, Jr., Asst. City Sol., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

We have before us a question concerning the scope of the relief to be granted to the plaintiffs in this action. For the reasons set forth below, we find that any relief to be granted should extend only to those female employees who were denied the use of sick leave for pregnancy after March 24, 1972.

Plaintiffs brought this action to challenge the City of Philadelphia's policy of denying the use of sick leave for maternity related disabilities. This Court

granted plaintiffs motion for summary judgment in a Memorandum and Order filed March 19, 1975. We found that the defendant's policy violated the prohibition of sexual discrimination in employment found in Title VII of the Civil Rights Act of 1964. Consequently, we enjoined the City of Philadelphia from denying the use of sick leave for absences from work resulting from physical disability caused by pregnancy or childbirth. We expressly withheld judgment on the issue of damages for past denials of sick leave.

Both parties agree that Title VII did not apply to governmental units, including the defendant City of Philadelphia, until March 24, 1972. At that time Title VII was amended by the Equal Employment Opportunity Act of 1972 and coverage was expanded. See 42 U.S.C. § 2000e(a). Nevertheless, the plaintiffs argue that back pay and other relief should be awarded to women who were denied sick leave for maternity-related disabilities prior to March 24, 1972, if those women are still working for the City of Philadelphia or receiving a pension from the City. The plaintiffs claim that such women have continued to suffer the effects of past discrimination, and that relief should be granted to remedy these continuing effects. We find that prior cases do not support the plaintiffs' theory of recovery for past discrimination.

■ Plaintiffs have cited a number of racial discrimination cases in which seniority systems were found to violate Title VII because they perpetuated discrimination that had occurred before the ·effective date of Title VII. See, e. g., *United States v. N. L. Industries*, 479 F.2d 354, 360–61 (8th Cir. 1971); *Robinson v. Lorillard Corp.*, 444 F.2d 791 (4th Cir. 1971), cert. denied, 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655; *Jones v. Lee Way Motor Freight, Inc.*, 431 F.2d 245, 247 (10th Cir. 1970), cert. denied, 401 U.S. 954, 91 S.Ct. 972, 28 L.Ed.2d 237; *Quarles v. Phillip Morris, Inc.*, 279 F.Supp. 505 (E.D.Va.1968). Although these cases do find

violations of Title VII, the violations are based on present discrimination, not on the continuing effects of pre-Title VII discrimination. Admittedly, in each of these cases the present discrimination ·arises only because a present practice perpetuates discrimination that occurred prior to the effective date of Title VII. Nevertheless, it is the present practice which is found to be discriminatory and which is declared unlawful. As stated by the Seventh Circuit:

"Title VII speaks only to the future. Its backward gaze is found only on a present practice which may perpetuate past discrimination." *Waters v. Wisconsin Steel Works of International Harvestor Co.*, 502 F.2d 1309 (7th Cir. 1974).

The legal principle established in the cases cited by the plaintiffs is simply that a present practice which appears on its face to be racially neutral can be a violation of Title VII if it perpetuates past discrimination. These cases certainly do not hold, as plaintiffs suggest, that courts may use Title VII to remedy any continuing effects of pre-Title VII discrimination. Rather, only post-Title VII practices may be examined for discriminatory effects.

Plaintiffs also have cited two cases dealing with the effect of the 1972 amendments to Title VII. *Rackin v. University of Pennsylvania*, 386 F.Supp. 992, 1006–07 (E.D.Pa.1974); *Johnson v. University of Pittsburgh*, 359 F.Supp. 1002 (W.D.Pa.1973). In *Johnson* the defendant university acted to deny the plaintiff tenure before the 1972 amendments went into effect subjecting the university to the provisions of Title VII. Despite the decision to deny tenure, however, the plaintiff was not to be discharged from employment until June, 1973. The Court held that since the actual discharge was not to occur until long after the University became subject to Title VII, the plaintiff was entitled to press her Title VII claims as to the actual discharge. As in the racial discrimination cases discussed previously, the violation was based on something that oc-

curred after the effective date of Title VII.

*Rackin v. University of Pennsylvania, supra,* also involved a denial of tenure before Title VII was applicable, and continued employment after that time. Relying on *Johnson,* the Court allowed the plaintiff to maintain her Title VII claim. Although the Court in *Rackin* used some broad language implying that relief may be granted to remedy continuing effects of pre-Title VII discrimination, the plaintiff in that case apparently had alleged actual continued discrimination. For example, she claimed that she was subjected to special requirements for possible reconsideration for promotion and tenure within the English Department. 386 F.Supp. at 1006. Thus, the Court in *Rackin* was applying the established principle that present policies that are discriminatory because of pre-Title VII discrimination may be challenged under Title VII. Any broader interpretation of *Rackin* is unwarranted in light of the prior cases on which the Court relied. See 386 F.Supp. 1006.

■ We have reviewed the cases cited by the plaintiffs in order to demonstrate that those cases do not support the granting of relief to remedy the effects of pre-Title VII discrimination when no continued discrimination is involved. In fact, one of the cases cited by the plaintiffs clearly refused to grant relief to men who retired before July 2, 1965 (the effective date of Title VII), even though such men continued to receive smaller pensions than similarly situated women. *Rosen v. Public Service Electric and Gas Co.,* 477 F.2d 90, 96 (3d Cir. 1973). The continuing effect of lower pensions seems to be exactly analogous to the types of continuing effects alleged in this case. Consequently, the refusal of the Court in *Rosen* to provide relief to men who retired before the effective date of Title VII is strong precedent for our decision of this case. Moreover, other courts have refused to apply the 1972 amendments retroactively to reach discriminatory practices by governmental units before March 24, 1972. See *Hill-Vincent v. Richardson,* 359 F.Supp. 308 (N.D.Ill.1973); *O'Brien v. Shimp,* 356 F.Supp. 1259 (N.D.Ill.1973).

Thus, in the instant case, we can grant relief only for discriminatory practices which occurred after March 24, 1972. As to those women who were denied the use of sick days for maternity related disabilities before that date, we find no continued discrimination. Certainly many of those women did lose pay, both in money and in fringe benefits, but those losses were complete before Title VII became applicable to the defendant. The plaintiffs' allegations of lost accumulations of sick leave, vacation time, and seniority, do not indicate any discriminatory practices occurring after March 24, 1972. Unlike the defendants in the racial discrimination cases discussed previously, the defendant here has not established a seniority system or transfer policy as a thinly disguised means of continued discrimination. While the City of Philadelphia undoubtedly did discriminate before March 24, 1972, by denying sick leave to women with maternity-related disabilities, the City at that time was exempt from the provisions of Title VII. Since the effective date of the 1972 amendments, the City has not discriminated against those women. Consequently, the class of women who were denied sick leave for maternity-related disabilities prior to March 24, 1972, are not entitled to relief.